## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

DONALD HAYDEN PHILLIPS                                          PETITIONER

v.                                                    No. 4:20CV145-SA-JMV

TATE REEVES, ET AL.                                          RESPONDENTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Donald Hayden Phillips for a writ of *habeas corpus* under 28 U.S.C. § 2254.   The State has responded to the petition; Phillips has replied, and the parties have submitted additional briefing.   The matter is ripe for resolution.   For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient.   Duker, The English Origins of the Writ of Habeas Corpus:   A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934).   It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States.   Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it.   *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789.   *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

> 1948 Judicial Code. The recodification of that year set out important procedural
> limitations and additional procedural changes were added in 1966.   The scope of the
> writ, insofar as the statutory language is concerned, remained essentially the same,
> however, until 1996, when Congress enacted the Antiterrorism and Effective Death
> Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners
> and setting out special, new *habeas corpus* procedures for capital cases.   The changes
> made by the 1996 legislation are the end product of decades of debate about *habeas
> corpus*.

*Id*.   Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of

the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held

by a *state* in violation of the supreme law of the land.   *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct.

582, 588, 59 L. Ed. 969 (1915).

### Procedural Posture[1]

Donald Hayden Phillips was convicted of aggravated assault (Count I), kidnapping

(Count II), and sexual battery (Count III) in the Circuit Court of Grenada County, Mississippi, in

Cause No. 2015-028-CR. SCR, Vol. 1 at 182.[2]   On May 26, 2017, the circuit court sentenced

Phillips to serve a term of twenty years, with fifteen years suspended and five years to serve in

Count I, to run consecutively to the sentence in Count III; thirty years in Count II to run

concurrently to the sentence in Count III; and thirty years in Count III, all to be served in the

custody of the Mississippi Department of Corrections ("MDOC").   SCR, Vol. 2 at 90-92.

Phillips, through counsel, appealed his convictions and sentences, raising the following

issues:

> i.   Whether the trial court erred in allowing substitute technical reviewer testimony
>      at trial thereby violating defendant's rights under the Confrontation Clause.

---

[1] The court has drawn the procedural posture of this case from the State's response; the posture is well-documented and uncontested.

[2] The jury was unable to reach a verdict as to the charge of rape in Count IV of the indictment.   *Id.*

ii.  Whether the trial court erred by refusing to admit into evidence five (5) photographs of [the victim] and (1) Facebook posting of [the victim] made after the alleged occurrence as offered into evidence by the defendant.

iii.  Whether the sentencing of Hayden to thirty-five (35) years in the State Penitentiary without the possibility of parole constituted unconstitutional cruel and unusual punishment and was the result of the Court's abuse of discretion and bias and prejudice against Hayden.

iv.  Whether the trial court erred in denying Hayden's Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial.

v.  Whether the prejudicial effect of cumulative errors of the trial court would warrant a new trial.

SCR, Brief of Appellant.  On June 18, 2019, the Mississippi Court of Appeals affirmed Phillips' convictions and sentences.  *Phillips v. State*, 285 So. 3d 685 (Miss. Ct. App. 2019), *reh'g denied*, Oct. 8, 2019, *cert. denied,* 284 So.3d 754 (Miss. 2019).[3]

On June 18, 2020, Phillips, proceeding *pro se*, filed in the Mississippi Supreme Court an "Application for Leave to Proceed in the Trial Court" with his "Petition for Post-Conviction Relief and Memorandum of Law Supporting."  SCR, Cause No. 2020-M-00637.  Phillips asserted the following grounds in his post-conviction application (as stated by petitioner in the "Concise Statement of the Claims"):

i.  Whether the trial court erred in allowing substitute technical reviewer testimony at trial, violating petitioner's rights under the Confrontation Clause.

ii.  Whether the sentencing of Hayden to thirty-five years without parole was disproportionate and violative of his 8th and 14th Amendment rights.

iii.  Whether the State's evidence was insufficient to show elements of sexual battery under § 97-3-95(1)(a) beyond a reasonable doubt.

---

[3] Phillips was proceeding *pro se* at the time he filed his certiorari petition in the Mississippi Supreme Court.  The court has liberally construed Phillips' *pro se* certiorari petition as raising only the claims presented in Grounds One, Two, and Four in the instant *habeas corpus* petition.  *See* SCR, Certiorari Folder.  Phillips raised the claim in Ground Three of the instant petition to the state's highest court in post-conviction pleadings*.  See* SCR, Cause No. 2020-M-00637.

*Id*. On July 23, 2020, the Mississippi Supreme Court denied Phillips' application for post-conviction collateral relief:

> In his application, Phillips contends he is entitled to post-conviction collateral relief based upon allegations of: (1) a violation of his constitutional rights under the Confrontation Clause; (2) a sentence which amounted to cruel and unusual punishment; and (3) insufficient evidence to support his sexual-battery conviction. After due consideration, the panel finds that each of these claims were raised before, and rejected by, the Mississippi Court of Appeals on direct appeal. As these claims are barred by *res judicata*, and fail to meet any exceptions thereto, the panel finds this application should be denied.

*See* Exhibit B (citations omitted).[4, 5]

On August 17, 2020, Phillips proceeding *pro se*, filed the instant petition [1], claiming:

Ground One:     Violation of Confrontation Clause. I was not able to confront DNA analyst because she was on a ten-week maternity leave so State used substitute technical reviewer to testify about the report that Kathryn Rodgers, the DNA analyst performed and authored. The technical reviewer conducted no test.

Ground Two:     Trial court erred by refusing to admit five photographs of prosecutrix after alleged occurrence. Pictures show she was not ever traumatized but in fact better than ever and enjoying life.

---

[4] The *res judicata* bar may be found in Miss. Code Ann. § 99-39-21(3):

> (3) The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.

The state court's finding that a claim is barred by *res judicata* "does not prevent federal review of a *habeas* claim." *Jackson v. Epps*, 447 F. App'x 535, 544 (5th Cir. 2011) (citing *Cone v. Bell*, 556 U.S. 449 (2009)). Further, because Phillips' claims were held to be barred by *res judicata* in post-conviction proceedings, but were heard on the merits in Phillips' direct appeal, this court may "look through" to the last reasoned opinion in state court. *Ylst v. Nunnemaker,* 501 U.S. 797 (1991); *see also Wilson v. Sellers*, — U.S. —, 138 S. Ct. 1188, 1192 (2018) (discussing *Ylst* and holding that the "federal court should 'look through' the unexplained decision to the last related state court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning.")

[5] The exhibits referenced in this memorandum opinion may be found attached to the State's response to the instant petition for a writ of *habeas corpus*.

| Ground Three: | Whether the sentence of thirty-five years was unconstitutional and cruel and unusual punishment.   I am a first-time offender; showed judge was biased and abused discretion, having trial in courthouse [the victim] worked in. |
|---|---|
| Ground Four: | Trial court erred in denying JNOV.   No knife ever found, no doctor to explain what caused wounds.   A lot of inconsistent statements.   She was on meth and failed drug test for it.   No DNA match.   Just possible contributor.   Had multiple times to leave her house but never did (no kidnaping) and never was bound.   She said in open court she does not know what caused wounds. |

Doc. 1 at 5-10.[6]

**Facts**

The Mississippi Court of Appeals accurately summarized the facts and procedural history

of this case:

¶ 2. Before dawn, one spring day, Jane Doe [fn omitted] was awoken by the sound of someone at her front door.   When she went outside, she initially did not see anyone, but as she turned to go back in, she saw Donald Hayden Phillips backed up against her trailer.   Once Jane spotted him, Phillips gave her a "crazy look" and forced his way inside.

¶ 3. Jane told Phillips to leave and attempted to stop him from advancing further into her home.   Phillips responded by stabbing Jane in the neck with a pocketknife.   Jane fled to the front door in an attempt to escape, but Phillips stabbed her in the back before she could reach the door. Jane then lost consciousness.

¶ 4. After she regained consciousness, Jane made another escape attempt – this time through the back door.   Phillips again caught her before she could escape. He threw Jane on the couch, and she lost consciousness for a second time.   When

---

[6] The petitioner has attempted to raise two more claims (ineffective assistance of counsel and bias of the prosecutor), but did not do so until he filed his Traverse [11].   However, claims not raised in an initial *habeas corpus* petition are not properly before the reviewing court. *Hopper v. Dretke*, 106 F. App'x 221, 228 n.25 (5th Cir. 2004); *Yohey v. Collins*, 988 F.2d 222, 225 (5th Cir. 1993).   As such, the court will not consider these claims.   The remainder of the Traverse challenges the jury's determination of the facts and recapitulates the arguments in the petition.   As discussed below, the jury determines the facts in a criminal case.   *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Jane awoke, Phillips had either already removed her pants or was in the process of doing so. Phillips then ripped off her underwear and repeatedly attempted to rape her over the next several hours. During this time Phillips used his fingers to digitally penetrate Jane's vagina and anus "aggressively [and] multiple times." He also threatened to kill Jane if she tried to escape again.

¶ 5. Several hours into the attack, Jane's sister and her sister's boyfriend arrived at the trailer. Upon their arrival, Phillips forced Jane into the bathroom. While brandishing a knife, Phillips pressed himself against the bathroom door and threatened to kill Jane if she did not get rid of them. During this time, Jane's neighbor and Jane's ex-boyfriend also arrived at the trailer. When Jane's ex-boyfriend told her he was leaving she shouted out, "[P]lease don't go!" Jane's ex-boyfriend then broke down the bathroom door -simultaneously freeing Jane and trapping Phillips inside. Jane escaped to her back deck and from there was transported to the hospital.

¶ 6. The emergency-room nurse testified that Jane had lost a lot of blood from multiple potentially life-threatening wounds. Jane was stabbed a total of seventeen times in her neck, hand, back, forearm, and both breasts. A rape kit was performed, multiple pieces of hair were collected, and swabs were taken from all over Jane's body.

¶ 7. Kathryn Rodgers was the analyst who tested the samples collected at the hospital. The swabs taken of Jane's vagina and anus tested positive for seminal fluid and spermatozoa. DNA testing of the seminal fluid and spermatozoa could not exclude Phillips as a potential contributor, and there was a 99.9% chance that the rest of the population could be excluded as a potential contributor.

¶ 8. At the time of trial, Rodgers was either on or nearing maternity leave. Because Rodgers was unavailable to testify at trial, the State intended to call the technical reviewer on the case, George Schiro, to testify in Rodgers' place. In addition to being the technical reviewer on the case, Schiro was also a DNA analyst and director of the laboratory where the tests were conducted. The trial court found his close involvement was sufficient to give testimony.

*Phillips*, 285 So. 3d at 688-89.

## Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered Grounds One through Four on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's

decision contradicted federal law. As such, the exception in subsection (d)(1) does not apply to Grounds One through Four of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Ground One: No Confrontation Clause Violation

Phillips argues that the trial court violated his constitutional rights under the Confrontation Clause by allowing surrogate testimony regarding the results of DNA testing. He argues that he should have been permitted to confront the DNA analyst who actually performed the testing (who was on maternity leave at the time of trial), rather than the technical reviewer (who testified in her stead at trial). Phillips raised this claim on direct appeal to the Mississippi Court of Appeals – and to the Mississippi Supreme Court on certiorari review. He raised the claim once more in his application for post-conviction relief in the Mississippi Supreme Court.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI., cl. 2. Thus, the Sixth Amendment guarantees a defendant's right to confront witnesses who "bear testimony" against him. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354 (2004). The Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the accused; (4) to establish the truth of the matter asserted; (5) unless

the declarant is unavailable, and the defendant had a prior opportunity to cross-examine him."
*United States v. Jackson*, 636 F.3d 687 (5th Cir. 2011) (citations omitted).   The Confrontation Clause applies *only* to statements offered to prove the truth of the matter asserted.   *Williams v. Illinois*, ⸺ U.S. ⸺, 132 S.Ct. 2221, 2228 (2012)(plurality opinion), *Crawford*, 541 U.S. at 59, n. 9.

A witness' testimony against a defendant is thus inadmissible "unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."   *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009) (citing *Crawford*, 541 U.S. at 54).   Under the Confrontation Clause, a defendant need not seek the attendance and testimony of witnesses offering evidence against him.   *Id.* at 324.   The prosecution has an affirmative duty to call each witness, elicit testimony, and present the witness for cross-examination:

> Converting the prosecution's duty under the Confrontation Clause into the defendant's privilege under state law or the Compulsory Process Clause shifts the consequences of adverse-witness no-shows from the State to the accused.   More fundamentally, the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court.   Its value to the defendant is not replaced by a system in which the prosecution presents its evidence via *ex parte* affidavits and waits for the defendant to subpoena the affiants if he chooses.

*Id*.   The prosecution may, nonetheless, introduce the statement of a witness who is unavailable, even absent a prior opportunity for cross-examination by the defense, under two circumstances: (1) when the statement is not "testimonial,"[7] and (2) when the witness is unavailable because the defendant engaged in wrongdoing designed to prevent the witness from testifying.[8]

---

[7] *Melendez-Diaz, supra*.

[8] *Giles v. California*, 554 U.S. 353, 128 S.Ct. 2678 (2008); *see also* Fed. R. Ev. 804(b)(6).

In *Bullcoming v. New Mexico*, 564 U.S. 647 (2011) the Supreme Court expounded upon the issue. The State sought to admit forensic reports into evidence as a business record and an exception to the hearsay rules. The Court in *Bullcoming* considered whether the Confrontation Clause would permit the prosecution to introduce "a forensic laboratory report containing a testimonial certification – made for the purpose of proving a particular fact – through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Id.* at 652.

The analyst who tested Bullcoming's blood sample and certified the results was on unpaid leave at the time of trial, and the other analyst who substituted to testify about the report neither participated in the testing nor observed the test being conducted – and had *no involvement* in the creation of the report. *Id.* at 655-56. The Supreme Court found that, under those facts, the lab report was testimonial and that the use of the surrogate testimony at trial violated the defendant's rights under the Confrontation Clause. *Id*. at 663. Phillips, citing *Bullcoming,* argues that the testimony in his trial by a substitute witness, a technical reviewer, violated his rights under the Confrontation Clause.

In the instant case, Kathryn Rodgers was the analyst who tested samples collected at the hospital, including swabs from the victim, and those swabs "tested positive for seminal fluid and spermatozoa." *Phillips,* 285 So. 3d at 689. DNA testing "could not exclude Phillips as a potential contributor, and there was a 99.9% chance that the rest of the population could be excluded as a potential contributor." *Id.* Rodgers was "either on or nearing maternity leave" and thus unavailable to testify at the time of trial. *Id.* The State filed a pretrial motion to substitute witnesses and sought to call, instead, the technical reviewer, George Schiro, to testify about the DNA testing. SCR, Vol. 1 at 87-106.

At the hearing on the State's motion to substitute, Schiro testified that he was the lab director in charge of lab operations and quality control, as well as a DNA analyst. SCR, Vol. 3 at 4-5. Schiro stated that Rodgers was the analyst who drafted the report, but that she was scheduled for maternity leave and would be unable to testify until she returned. *Id.* at 17.

Schiro testified that Rodgers analyzed the samples and drafted the report; however, as the technical reviewer, he examined all data, provided quality control, and ensured that the data supported the report. *Id.* at 8. Schiro stated that during this process, he arrived at his own independent expert opinion regarding the DNA analysis to a reasonable degree of scientific certainty, testifying that he came to an independent conclusion "after reviewing all the data in the report in the file." *Id.* at 8-9. He testified that his opinion was not a "rubber stamp" and that he had one hundred percent confidence in the report and results. *Id.* He then discussed the control measures in the lab and the testing procedures used – confirming that, based on his review, he formed his own expert opinion regarding the DNA analysis and results. *Id.* at 10-13.

After the hearing on the State's motion to substitute witness, the trial court found that Schiro's close involvement was sufficient to allow him to testify in the case. SCR, Vol. 1 at 150; Vol. 2 at 152-53. The trial judge found that Schiro was "much more than a mere conduit in this case" and that, based on his training and experience, Schiro had reviewed the raw data and procedures in place and come to his own conclusion. SCR, Vol. 3 at 25-26. The trial court further found that, because Schiro was subject to cross-examination on his findings, allowing his testimony would not violate the Confrontation Clause. *Id.* The trial court did not want to further delay the trial by waiting for Rodgers to return from maternity leave because "this case has been delayed numerous times already," and "Mr. Schiro is certainly capable of testifying." *Id*. at 26.

- 11 -

Phillips raised his claim in Ground One of the instant petition in his direct appeal to the Mississippi Court of Appeals. Phillips argued on direct appeal, as here, that the trial court should have granted a continuance to allow Rodgers to return from maternity leave to testify. He argues that the trial court violated the Confrontation Clause by allowing the State to substitute Schiro as a witness to testify regarding the results of the DNA test.

The Mississippi Court of Appeals discussed the *Crawford* decision, which holds that testimonial statements made out-of-court by a witness not present at trial are admissible only if the declarant is not available, and the defendant is given the opportunity to cross-examine the witness. *Phillips,* 285 So. 3d at 689. The court held that, under *Melendez-Diaz* and *Bullcoming*, forensic testing, like that in the present case, meets the definition of testimonial statements and cannot be introduced through "surrogate testimony" of a witness *who had not been involved in the creation of the documents at issue*. *Id.* The state court found, however, that "neither *Melendez-Diaz* nor *Bullcoming* stands for the proposition that automatic *per se* error – much less reversible error – occurs in all cases where the primary analyst who performed the test and prepared the report … fails to testify." *Id.* at 690 (citations omitted).

The court of appeals discussed the two-part state law test for determining the admissibility of surrogate testimony: (1) "the testifying witness must have intimate knowledge of the particular report sought to be admitted," and (2) "the testifying witness must have been actively involved in producing that report." *Id.* at 690. The Court of Appeals then considered Phillips' claim and found that the facts in his case were distinguishable from those in *Bullcoming* because Schiro played such a large role in creating and reviewing the report. The Court of Appeals found:

> Here, the testifying witness, Schiro, was the director of the laboratory where the
> test was performed. Schiro actively participated in the report's production and

- 12 -

> possessed intimate knowledge of the analyses rendered, making his testimony admissible. Schiro helped draft the report, calculated the statistics, and checked the data to make sure it supported the report. Schiro finalized the report and had the final say as to what was approved. Most importantly, Schiro independently evaluated the data and arrived a[t] his own, independent expert opinion based upon a reasonable degree of scientific certainty. The dangers of a defendant being deprived of the ability to confront the evidence arrayed against him are not present under the specific facts of this case.

*Phillips*, 285 So. 3d at 690. The court held that, "[b]ecause Schiro had intimate knowledge of the report and was actively involved in its creation we find that there was no Confrontation Clause violation[.]" *Id.*

To resolve this issue in the present case, the court must determine whether *clearly established federal law* prohibits the State from introducing the testimony of Schiro, the technical reviewer, regarding the results of the DNA testing. Phillips argues that the state court's decision in this case was contrary to the holding in *Bullcoming*. A case in point is *Grim v. Fisher*, 816 F.3d 296, 307 (5th Cir. 2016), where the testifying witness was a technical reviewer, who:

> examined the analyst's report and all of the data, including everything the analyst did to the item of evidence, ensured that the analyst did the proper tests and that the analyst's interpretation of the test results was correct; ensured that the results coincided with the conclusion in the report; agreed with a reasonable degree of certainty with the examinations and results of the report; and signed the report.

*Id.* at 310. The Fifth Circuit discussed the application of *Bullcoming* to testimony of a technical reviewer (rather than the tester), finding:

> [A]t most, the decision in *Bullcoming* clearly establishes that, when one scientist or analyst performs a test reported in a forensic laboratory report containing a testimonial certification – made for the purpose of proving a particular fact – and the prosecution introduces the report and certification to prove that particular facts, the Confrontation Clause forbids the prosecution from proving that particular fact through the in-court testimony of a scientist or analyst who neither signed the certification nor performed or observed the test reported in the certification. ***Bullcoming* does not clearly establish what degree of involvement with the forensic testing, beyond what is present in Bullcoming, is required of a testifying witness.** In other words, at most, *Bullcoming* holds

that if scientist A performed the test, the prosecution cannot prove a particular fact contained in scientist A's testimonial certification by offering the in-court testimony of scientist B, if scientist B neither signed the certification nor performed or observed the test. But *Bullcoming* does not hold that scientist B cannot testify even if he has a sufficient degree of involvement with the forensic testing.

*Grim,* 816 F.3d at 307 (emphasis added).

The Fifth Circuit in *Grim* also acknowledged *Bullcoming's* lack of clarity regarding what degree of involvement of the surrogate witness in the underlying testing and analysis would be required to satisfy the Confrontation Clause. *Id.* The Fifth Circuit ultimately held that the disparate holdings regarding *Bullcoming* among many courts "supports the conclusion that the Supreme Court has not clearly established what degree of involvement with the forensic testing is required of an in-court witness offered to prove a particular fact in a testimonial certification beyond what was deemed insufficient in *Bullcoming*." *Id.* at 309. *Bullcoming* did not address the degree of involvement that the witness in that case had; as such, *Bullcoming* did not clearly establish federal law as to that issue. In other words, *Bullcoming* did not establish the minimum level of participation that a surrogate witness must have in creating a report necessary for the witness to testify regarding the report. The law on this point is not clearly established.[9]

In the absence of clearly established federal law on that ruling, the Mississippi Supreme Court's decision simply "could not have been contrary to, or an unreasonable application of, clearly established federal law." *Id.* As such, the trial court did not violate the Confrontation Clause in allowing the substitute witness Schiro to testify. *See Jenkins v. Hall,* 910 F.3d 828 (5th Cir. 2018). Phillips is not entitled to federal *habeas corpus* relief as to his claims in Ground One.

---

[9] The Fifth Circuit cited *Grim* with approval in a factually similar case. *See Jenkins v. Hall*, 910 F.3d 838 (5th Cir. 2018).

**Ground Two:   No Error in Denying Admission of Photographs into Evidence**

Phillips argues in Ground Two that the trial court erred in excluding photographs and a Facebook post the victim made after the crimes.   Phillips argues that the photographs show that the victim "was not ever traumatized but in fact better than ever and enjoying life."   Doc. 1 at 7.   Phillips raised this claim in the Mississippi Court of Appeals on direct appeal of his convictions and sentences and during certiorari review by the Mississippi Supreme Court.

During the cross-examination of the victim, defense counsel sought to introduce several "Facebook [posts] or text messages made by [the victim] after the occurrence."   SCR, Vol. 4 at 151.   Defense counsel argued that the jury should see "how she was acting after [the attack]."   *Id*.   The prosecution objected as to the relevance of the proffered messages because they occurred after the crimes.   *Id*.   The trial judge declined to admit the messages or posts into evidence, finding that the evidence in question was "so irrelevant it's not even worthy of bringing it to the Court's attention."   *Id.* at 152.   The trial court added, "[t]here's no set standard of how somebody is going to behave after they've been brutally assaulted and raped.   But these prove nothing.   I mean, they're as irrelevant as anything I've ever seen handed to the Court."   *Id.*

First, a claim – based upon state law – challenging a ruling on the admissibility of evidence is precluded from federal *habeas corpus* review because a state prisoner may only obtain relief under 28 U.S.C. § 2254 if he is held "in custody in violation of the Constitution or laws or treaties of the United States."   *Engle v. Isaac,* 456 U.S. 107, 118 (1981).   A " 'mere error of state law' is not a denial of due process.   If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question.' "   *Id.* at 121 n.21 (citations omitted);

- 15 -

State court "evidentiary rulings present cognizable *habeas* claims only if they run afoul of a specific [federal] constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999) (citing *Cupit v. Whitley,* 28 F.3d 532, 536 (5th Cir. 1994)) *see also Wainwright v. Goode,* 464 U.S. 78, 86 (1993) ("[M]ere errors of state law are not the concern of this Court ... unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.")   "[I]n reviewing state court evidentiary rulings, the federal *habeas* court's role 'is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause."   *Castillo v. Johnson,* 141 F.3d 218, 222 (5th Cir. 1998) (citations omitted). For these reasons, the alleged violation of state rules, without more, is not a valid ground for *habeas corpus* relief.   *Edwards v. Butler***,** 882 F.2d 160, 164 (5th Cir. 1989) (citations omitted).

As set forth above, Phillips raised this evidentiary issue on direct appeal – and again in his petition for certiorari review in the Mississippi Supreme Court.   On appeal, Phillips argued that the admission of the photographs and Facebook posts would have shown that the victim's behavior after the attack "was inconsistent with the behavior of someone who had been stabbed seventeen times, kidnapped, sexually assaulted, and raped."   *Phillips,* 285 So. 3d at 690.   The state appellate court reviewed the trial court's decision to exclude the photographs and Facebook posts for an abuse of discretion.   *Id.* at 691.   The state appellate court found that photos of the victim after the crime did not establish whether her accusations were credible.   *Id.*   The court held that, "[s]imply because there were photos of the victim in the weeks and months subsequent to the attack where she was smiling or enjoying life does not go to whether Phillips attacked her."   *Id.*   The court noted that the relevant issue was the identity of the person who caused the victim's injuries, not the effect of those injuries on her life:

- 16 -

> The evidence was uncontested that [the victim] was injured and suffered major loss of blood.   The question at trial was if Phillips caused that harm.   If the posts had cast doubt as to the cause of the injuries, they could have been properly admitted.

*Id.*   The court concluded that Phillips' failed to show "alleged inconsistencies [in the victim's testimony] would be resolved by admission of the photos and Facebook post[s]," as they were unrelated to the proffered evidence.   *Id*

To the extent that Phillips bases his claim in Ground Two on state law, it is beyond the scope of federal *habeas corpus* review.   In addition, as discussed above, the trial court's ruling on this evidence was correct under state law, and Phillips' challenge to the trial court's ruling is without substantive merit.   Further, Phillips has not explained how the decision not to admit the photographs violated federal law.   As such, the holdings of the Mississippi Court of Appeals on direct appeal and the Mississippi Supreme Court in denying certiorari review were correct.   Hence, Phillips is not entitled to *habeas corpus* relief on his claim in Ground Two of the petition.

### Ground Three:   The Total Sentence of Thirty-Five Years Was Constitutional – and Did Not Constitute Cruel and Unusual Punishment

In Ground Three, Phillips argues that his sentence of thirty-five years was unconstitutional, rising to the level of cruel and unusual punishment, because he is a first-time offender.   He raised this claim on direct appeal to the Mississippi Court of Appeals – and to the Mississippi Supreme Court in his application for post-conviction relief.

"[T]he Eighth Amendment's ban on cruel and unusual punishments 'prohibits ... sentences that are disproportionate to the crime committed,' and the 'constitutional principle of proportionality has been recognized explicitly in this Court for almost a century.'"   *Ewing v. California*, 538 U.S. 11 (2003) (citing *Solem v. Helm,* 463 U.S. 277, 284-86 (1983)).   Courts must give "substantial deference to the broad authority [of] legislatures" to set punishments for crimes and "the discretion [of] trial courts … in sentencing convicted criminals."   *Solem,* 463

- 17 -

U.S. at 292. In cases where an initial comparison of the crime to the sentence would lead to "gross disproportionality," a sentence may be subject to the three-pronged analysis set forth in *Solem*. The factors to consider when determining whether a sentence is disproportionate to the crime are: (1) the gravity of the offense; (2) how the sentence compares to those imposed for the same crime on other criminals in the same jurisdiction; and (3) how the sentence compares to the same crime in other jurisdictions. *Id*. at 291-292.

However, generally, *habeas corpus* relief is warranted on a challenge to a sentence only if a petitioner can show that the sentence imposed "exceeds or is outside the statutory limits or is wholly unauthorized by law." *Haynes v. Butler,* 825 F.2d 921, 923 (5ᵗʰ Cir. 1987).[10] In *Lockyer v. Andrade*,[11] the Supreme Court addressed whether *habeas corpus* relief was warranted on a claim that a state sentence violated the Eighth Amendment. There is no "clear or consistent path for courts to follow" in determining whether a sentence violates the Eighth Amendment. *Lockyer,* 538 U.S. at 72. However, "one governing … [Eighth Amendment] principle emerges as 'clearly established' under § 2254(1): A gross disproportionality principle is applicable to sentences for terms of years." *Id.* "[T]he only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* (citations omitted).

---

[10] Mississippi appellate courts have also held, "[a]s a general rule, this Court will not disturb a sentence so long as it does not exceed the maximum term authorized by statute." *Day v. State*, 818 So. 2d 1196, 1203 (Miss. Ct. App. 2002); *see also Burrell v.* State, 726 So. 2d 160, 162 (Miss. 1998).

[11] *Lockyer v. Andrade*, 538 U.S. 63 (2003).

- 18 -

Phillips was convicted for:   aggravated assault (Count I) (maximum sentence of 20 years, Miss. Code Ann. § 97-3-7(2)(a)); kidnapping (Count II) (maximum sentence of life, if penalty set by a jury, or 30 years, if penalty set by the court, Miss. Code Ann. § 97-3-53); and sexual battery (Count III) (maximum sentence of 30 years, Miss. Code Ann. § 97-3-101(1)).

Phillips was sentenced to thirty years for the sexual battery conviction; thirty years for the kidnapping conviction (to be served concurrently with the sentence for sexual battery); and twenty years for the aggravated assault conviction, with fifteen years suspended and five years (to serve consecutively to the other two sentences.)   SCR, Vol.   2 at 190-92; Vol. 5 at 370-76. Clearly, Phillips was sentenced within the statutory limits for the crimes of his convictions.   The court ordered two of his sentences to run concurrently, and suspended a portion of his third sentence – resulting in a sentence of 35 years.   Phillips faced a sentence of 80 years if the trial court had imposed the full term in all three convictions and had them run consecutively.   As such, the court showed some leniency, despite noting that this was one of the "most brutal and senseless crimes that th[e] Court ha[d] seen," while noting Phillips' lack of contrition.   SCR, Vol. 5 at 371.

Phillips raised his claim challenging the constitutionality of the sentences imposed on direct appeal and again in his application for post-conviction relief.   On appeal, the state appellate court discussed the statutory minimum and maximum as reflected in the appropriate statute for each crime for which Phillips was convicted.   *Phillips,* 285 So. 3d at 691-92.   As the court explained, the sentences imposed by the trial court fell within the statutory limits for each of the crimes and were, therefore, presumptively valid and not in violation of Phillips' right to be free from cruel and unusual punishment.   *Id.* at 692.   A review of the facts of the instant case reveals that the state court did not run afoul of the Eighth Amendment in upholding the sentences

imposed, as the sentences are well within statutory limits and do not fall into the category of an "exceedingly rare" or "extreme" case as discussed in *Lockyer.*

The total sentence imposed in this case was not disproportionate, much less "grossly disproportionate" to the crimes charged. The facts in this case did not constitute a scenario that was materially indistinguishable from a prior decision of the United States Supreme Court. *See Lockyer*, 538 U.S. at 72. The instant case is not an extraordinary one – and thus does not rise to the level of an Eighth Amendment violation as a grossly disproportionate sentence. *Id.* at 77. For these reasons, the decision by the state appellate courts upholding the trial court's sentence was neither contrary to, nor an unreasonable application of, clearly established federal law to the facts of this case. *Id.* Further, the decision was not based on an unreasonable determination of the facts in light of the evidence presented. As such, Phillips is not entitled to *habeas corpus* relief on his claim in Ground Three.

### Ground Four:   The Evidence Presented at Trial Was Sufficient to Support the Verdict

In Ground Four, Phillips challenges the sufficiency of the evidence presented to convict him of the crimes charged. He contends that:   (1) there was no knife found at the scene; (2) there were inconsistent statements; (3) "[the victim] was on meth and failed drug test for it;" (4) there was no DNA match, "just possible contributor;" (5) the victim had "multiple times to leave her house but never did (no kidnaping) and never was bound;" and (6) the victim stated in court that "she [did] not know what cause[d] wounds." Doc. 1 at 10. He raised this challenge to the sufficiency of the evidence on direct appeal to the Mississippi Court of Appeals and again on certiorari review to the Mississippi Supreme Court. Phillips also raised a challenge to the sufficiency of the evidence to support the sexual battery conviction in his state application for post-conviction relief.

- 20 -

A challenge to the sufficiency of the evidence can support a claim for *habeas corpus* relief *only* when the evidence, viewed in the light most favorable to the State, is such that no reasonable fact finder of fact "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Vargas-Ocampo*, 711 F.3d 508 (5th Cir. 2013) (reaffirming the *Jackson* test for sufficiency of the evidence). The *Jackson* standard "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983).

The trier of fact bears the responsibility to resolve conflicts in the testimony and "draw reasonable inferences from basic facts to ultimate fact." *Jackson,* 443 U.S. at 319. *Jackson* allows the trier of fact to find the evidence sufficient to support a conviction, even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992). "[T]he jury – not the court – [must] decide what conclusions should be drawn from evidence admitted at trial." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 7 (2011)).

"Where a state appellate court has conducted a thorough review of the evidence . . . its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (internal citation omitted). Claims of insufficient evidence "face a high bar in federal *habeas* proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson,* 566 U.S. 650, 651 (2012). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id.* Instead, "a state-court decision rejecting a sufficiency challenge may not be overturned on federal *habeas* unless the decision was objectively unreasonable." *Parker,* 567 U.S. at 43 (quoting *Cavazos*, 565 U.S. at 7) (internal quotations omitted). "[T]he only question

- 21 -

under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656.

The district court sitting in *habeas corpus* review must accept all credibility determinations and conflicting inferences in favor of the jury's verdict, *Ramirez v. Dretke*, 398 F.3d 691, 694 (5th Cir. 2005), including both direct and circumstantial evidence. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). During *habeas corpus* review, the district court must defer to the trier of fact as to any conflicts requiring credibility determinations. *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002).

Given the overwhelming evidence of Phillips' guilt presented at trial, this ground for relief is frivolous. Phillips was convicted for aggravated assault, kidnapping, and sexual battery. On direct appeal, the Mississippi Court of Appeals addressed his claim that the evidence was insufficient to support his convictions and sentences:

> In reviewing the evidence in the light most favorable to the prosecution, we note certain facts: Phillips stabbed [the victim] seventeen times with a knife; [the victim] tried to escape two different times; the first time [the victim] attempted to escape Phillips stabbed her in the back to the point where she lost consciousness; on her second escape attempt, Phillips grabbed her, threw her on the couch and threatened to kill her if she tried to escape again; by constantly exhibiting the knife, Phillips forced Jane into the bathroom, confined her there against her will, and again threatened to kill her if she tried to escape; Phillips digitally penetrated Jane's vagina and anus multiple times without her consent; and Phillips repeatedly tried to rape Jane over the course of several hours. Based on the record in this case and the applicable law, we find that the trial court committed no error in denying Phillips' motion for a JNOV.

*Phillips,* 263 So. 3d at 675 (¶ 30); *see also generally,* SCR, Vols. 3-5 at 103-317. Indeed, the Court of Appeals mentioned only evidence gleaned from the victim's testimony (which was enough to make that finding.)

The jury could also consider the testimony of the victim's friends (as to her injuries and Phillips' presence at the scene), the forensic evidence, and the voluminous evidence and

statements gathered by the investigators. The victim testified at length regarding the details of the horrifying hours-long attack, including the sexual assaults, the fact that she was held against her will, and the injuries she received. SCR, Vol. 3 at 103-161. In addition, the victim's family and friends testified regarding the bloody disorganized crime scene and the victim's injuries, as well as the fact that, when they arrived at the victim's home, Phillips had retreated with the victim to bathroom and locked the door in an attempt to keep her from escaping – or alerting them as to her situation. SCR, Vol. 4 at 265-300; Vol. 5 at 301-03. Medical personnel also testified regarding the victim's extensive injuries and treatment, as well as the rape kit performed at the hospital to collect evidence (SCR, Vol.4 at 162-77), and the State presented testimony regarding forensic testing of the evidence collected and the results of that testing. *Id.* at 178-222. Further, law enforcement officials testified with regard to their investigation and what they found upon arrival at the scene, including testimony that Phillips was arrested in the woods near the victim's trailer, that Phillips had the victim's cell phone in his possession, and regarding the statement made by Phillips after his arrest. *Id*. at 226-64; Vol. 5 at 304-11.

To say the least, Phillips has not shown that the evidence, when viewed in the light most favorable to the State, is such that no reasonable finder of fact could have found the essential elements of the crimes beyond a reasonable doubt. As discussed above, the Mississippi Court of Appeals thoroughly addressed Phillips' claim challenging the sufficiency of the evidence in Ground Four, and the Mississippi Supreme Court denied certiorari review of his claim. Further, the Mississippi Supreme Court later denied the claim in Ground Four on post-conviction review as barred by *res judicata*. Exhibit B. For these reasons, the state court was correct in finding that there was sufficient evidence to support Phillips' convictions and sentences.

Phillips has presented nothing in his petition to overcome the deference afforded to the state courts' holding. He has not shown that the state courts' finding that his claim of insufficiency of the evidence was meritless was contrary to, or an unreasonable application of, clearly established federal law. In addition, he has not proven that the state court's determination of facts was unreasonable in light of the evidence presented. Given the vast amount of evidence adduced against him at trial, the state court's determination that Phillips' challenge to the sufficiency of the evidence was without merit was reasonable. Phillips has not met this burden – and certainly not with clear and convincing evidence. *See Miller,* 200 F.3d at 281; *see also* 28 U.S.C. § 2254(e)(1). As such, Phillips is not entitled to federal *habeas corpus* relief as to his claim in Ground Four of the instant petition.

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 15th day of November, 2023.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE